Andrew L. Packard (State Bar No. 168690)
Email: andrew@packardlawoffices.com
William N. Carlon (State Bar No. 305739)
Email: wncarlon@packardlawoffices.com
LAW OFFICES OF ANDREW L. PACKARD
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Phone: (707) 782-4060
Fax: (707) 782-4062

Barak Kamelgard (State Bar No. 298822)
Email: barak@lawaterkeeper.org
Benjamin Harris (State Bar No. 313193)
Email: ben@lawaterkeeper.org
LOS ANGELES WATERKEEPER
360 E 2nd Street, Suite 250
Los Angeles, CA 90012
Phone: (310) 394-6162

Attorneys for Plaintiff
LOS ANGELES WATERKEEPER

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a California non-profit association,<br><br>        Plaintiff,<br><br>    v.<br><br>ALTAIR PARAMOUNT, LLC, a Delaware limited liability company,<br><br>        Defendant. | Case No. 2:23-cv-05585-GW-PD<br><br>**NOTICE OF COMPLETED AGENCY REVIEW; REQUEST TO ENTER [PROPOSED] CONSENT DECREE**<br><br>**(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 to 1387)** |

TO THE CLERK OF THE COURT, ANY INTERESTED PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that United States Department of Justice and the national and Region IX offices of the United States Environmental Protection Agency ("federal agencies") have now completed their review of the proposed consent decree settling this case, and the 45-day review period has expired. *See* 33 U.S.C. § 1365(c), requiring that "[n]o consent judgment shall be entered in an action in which the United States is not a party prior to 45-days following the receipt of a copy of the proposed consent judgment by the Attorney General and the Administrator;" and 40 C.F.R. § 135.5, requiring the parties to provide notice to the court of the 45-day agency review period under 33 U.S.C. § 1365(c).

PLEASE TAKE FURTHER NOTICE that the federal agencies' November 13, 2023 letter confirming that they do not object to the entry of the proposed consent decree is attached hereto as **Exhibit 1**;

**NOW THEREFORE**, Plaintiff Los Angeles Waterkeeper respectfully requests that the Court execute and enter the proposed consent decree, attached hereto as **Exhibit 2**, and dismiss the claims with prejudice, except to the extent provided for in the proposed consent decree to interpret, modify or enforce the proposed consent decree.

Date:  November 30, 2023          LAW OFFICES OF ANDREW L. PACKARD

_____

William N. Carlon
Attorneys for Plaintiff
Los Angeles Waterkeeper

# EXHIBIT 1



**U.S. Department of Justice**

Environment and Natural Resources Division

90-1-24-06293

---

*Law and Policy Section*                                   *Telephone (202) 514-1442*
*P.O. Box 7415*                                           *Facsimile (202) 514-4231*
*Washington, DC  20044-7415*

November 13, 2023

PROVIDED TO COUNSEL OF RECORD
TO SUBMIT TO THE COURT VIA ECF

Clerk's Office
United States District Court
United States Courthouse
350 West 1st Street
Los Angeles, CA 90012

      Re:   *Los Angeles Waterkeeper v. AltAir Paramount, LLC* (C.D. Cal.)*,* Case No. 2:23-cv-05585

Dear Clerk of Court:

      I am writing to notify you that the United States has reviewed the proposed consent judgment in this action and does not object to its entry by this Court.

      On October 16, 2023, the Citizen Suit Coordinator for the Department of Justice received a copy of the proposed consent judgment in the above-referenced case for review pursuant to the Clean Water Act, 33 U.S.C. § 1365(c)(3).[1]  This provision provides, in relevant part:

> No consent judgment shall be entered in an action in which the United States is not a party prior to 45 days following the receipt of a copy of the proposed consent judgment by the Attorney General and the Administrator.

*See also* 40 C.F.R. § 135.5 (service on Citizen Suit Coordinator in the U.S. Department of Justice).  A settlement that does not undergo this federal review process is at risk of being void.

---

[1] The term "consent judgment" in the Clean Water Act citizen suit provisions has a broad meaning and encompasses all instruments entered with the consent of the parties that have the effect of resolving any portion of the case.  For example, a document stipulating to dismissal of a case of any part thereof is within the scope of this language.  Such documents and any associated instruments must be submitted to the United States and the court for review, notwithstanding any provisions purporting to maintain the confidentiality of such materials.  The Department monitors citizen suit litigation to review compliance with this requirement.

In its review, the United States seeks to ensure that the proposed consent judgment complies with the requirements of the relevant statute and is consistent with its purposes. *See Local 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 525-26 (1986) (a consent decree should conform with and further the objectives of the law upon which the complaint was based). For example, if the defendant has been out of compliance with statutory or permit requirements, the proposed consent judgment should require the defendant to come into prompt compliance and should include a civil penalty, enforceable remedies, injunctive relief, and/or an environmentally beneficial project payment sufficient to deter future violations, or combinations of the above.

In this case, the proposed consent decree requires, *inter alia*, that AltAir Paramount, LLC submit a payment to a non-party organization to be used to fund environmental project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in watersheds tributary to the Southern California Bight. Where a consent judgment provides for the payment of sums to a third party that is to undertake an environmentally beneficial project and/or acquire a property interest that will have environmental benefits, the United States typically requests that the third party provide a letter to the Court and to the United States representing that it is a 501(c)(3) tax exempt entity and that it: (1) has read the proposed consent judgment; (2) will spend any monies it receives under the proposed judgment for the purposes specified in the judgment; (3) will not use any money received under the proposed consent judgment for political lobbying activities; and (4) will submit to the Court, the United States, and the parties a letter describing how the funds were spent. In a letter attached hereto, the intended recipient of the funds confirmed that any funds received as a result of the proposed consent decree would be used solely for the purpose outlined in the consent decree and no portion of the funds would be used for political lobbying activities. The United States believes that this letter will help to ensure that any monies expended under the consent judgment will be used in a manner that furthers the purposes of the Clean Water Act and that is consistent with the law and the public interest.

Given the facts of this case, the United States has no objection to the proposed consent judgment. The fact that we do not have a basis to object to this consent judgment does not imply approval of this instrument.

The United States affirms for the record that it is not bound by this settlement. *See, e.g., Hathorn v. Lovorn*, 457 U.S. 255, 268 n.23 (1982) (Attorney General is not bound by cases to which he was not a party); *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found. Inc.*, 484 U.S. 49, 60 (1987) (explaining that citizen suits are intended to "supplement rather than supplant governmental action"); *Sierra Club v. Electronic Controls Design*, 909 F.2d 1350, 1356 n.8 (9th Cir. 1990) (explaining that the United States is not bound by citizen suit settlements, and may "bring its own enforcement action at any time"); 131 Cong. Rec. S15,633 (June 13, 1985) (statement of Senator Chafee, on Clean Water Act section 505(c)(3), confirming that the United States is not bound by settlements when it is not a party). The United States also notes that, if the parties subsequently propose to modify any final consent judgment entered in this case, the parties should so notify the United States, and provide a copy of the proposed modifications, forty-five days before the Court enters any such modifications. *See* 33 U.S.C. §1365(c)(3).

        We appreciate the attention of the Court.  Please contact the undersigned at 202-598-3315
if you have any questions.


                                        Sincerely,


                                        */s/ Arwyn Carroll*

                                        _____
                                        Arwyn Carroll, Attorney
                                        U.S. Department of Justice
                                        Environment and Natural Resources Division
                                        Law and Policy Section
                                        P.O. Box 7415
                                        Washington, D.C.  20044-4390

cc:     Counsel on Record via ECF

# EXHIBIT A



**201 4TH STREET, SUITE 102**
**OAKLAND, CALIFORNIA 94607**
**TELEPHONE 510.658.0702**

October 17, 2023

Byrn Bowen, Paralegal Specialist
United States Department of Justice
Environment & Natural Resources Division
Law and Policy Section
P.O. Box 7415
Ben Franklin Station
Washington, D.C. 20044-7415

Re: Los Angeles Waterkeeper v. AltAir Paramount (2:23-cv-05585-GW-PD)

Dear Ms. Bowen,

This letter is intended to provide assurance that I have received the Consent Decree between the above parties, and that I am authorized by my Executive Director and Board of Directors to make the following binding commitments on behalf of the Rose Foundation.

1) I understand that the Rose Foundation should receive funds from AltAir as specified in the Consent Decree.
2) The Rose Foundation shall only use these AltAir funds for project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in watersheds tributary to the Southern California Bight.
3) After funds are dispersed, the Rose Foundation shall send a report to the Justice Department and the Settling Parties setting forth the recipient and purpose of the funds and demonstrating conformance with the nexus of the Consent Decree.

**Rose Foundation for Communities and the Environment**
The Rose Foundation is a 501(c)(3) public charity (tax ID#94-3179772).  Its mission is to support grassroots initiatives to inspire community action to protect the environment, consumers and public health. To fulfill this mission, the Rose Foundation conducts the following activities:

- Raise money to award as grants to qualified non-profit organizations conducting charitable operations. The Foundation does not support political lobbying activities prohibited by Section 501(c)(3) of the IRS Code.

- Work directly in schools and in the community to encourage environmental stewardship and civic participation.



- Help government efforts to control pollution and protect the environment by encouraging community engagement in local, state and federal research and policy development.

Within this broad range of activities, all the Rose Foundation's work revolves around one or more of the following strategic themes:

- Build and maintain a bridge between the community and organized philanthropy.

- Protect the natural environment, public health, and consumer rights.

- Promote collaboration between labor, environmental, business, consumer and social interests.

- Cultivate a new generation of environmental stewards and social policy leaders.

- Respect the inalienable rights protected by our nation's constitution, and the essential human rights to clean air, clean water, and individual dignity and privacy.

The Rose Foundation is governed by a Board of Directors.  Grant applicants are required to submit written proposals, which must include at a minimum specific information about the goals, activities and projected outcomes of the proposed project, background about the charitable applicant, budget information, and a specific funding request. The Foundation may require additional information in order to fully evaluate the application. Applications are first screened by Foundation staff. Staff then make recommendations to the Foundation Board for action. The Foundation requires all projects to submit written reports within one year of receipt of the grant award describing work conducted under the grant, thereby providing an accountability mechanism over funds awarded. Annual audits by the certified public accounting firm Maze and Associates are posted on the Foundation's website www.rosefdn.org.

I hope this provides you with the information you require.  Please do not hesitate to contact me with any questions, or for additional information at (510) 658-0702 or jisaacs@rosefdn.org.

Sincerely,

Jodene Isaacs,
Mitigation Funds Director

# EXHIBIT 2

Andrew L. Packard (State Bar No. 168690)
Email: andrew@packardlawoffices.com
William N. Carlon (State Bar No. 305739)
Email: wncarlon@packardlawoffices.com
LAW OFFICES OF ANDREW L. PACKARD
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Phone: (707) 782-4060
Fax: (707) 782-4062

Barak Kamelgard (State Bar No. 298822)
Email: barak@lawaterkeeper.org
Benjamin Harris (State Bar No. 313193)
Email: ben@lawaterkeeper.org
LOS ANGELES WATERKEEPER
360 E 2nd Street, Suite 250
Los Angeles, CA 90012
Phone: (310) 394-6162

Attorneys for Plaintiff
LOS ANGELES WATERKEEPER

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a California non-profit association,<br><br>Plaintiff,<br><br>v.<br><br>ALTAIR PARAMOUNT, LLC, a Delaware limited liability company,<br><br>Defendant. | Case No.: 2:23-cv-05585-GW-PD<br><br>**[PROPOSED] CONSENT DECREE** |

## CONSENT DECREE

**WHEREAS,** Plaintiff Los Angeles Waterkeeper ("LA Waterkeeper" or "Plaintiff") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Los Angeles, California;

**WHEREAS,** LA Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS,** Defendant AltAir Paramount, LLC ("Defendant" or "AltAir") owns and operates a facility at 14700 Downey Avenue, Paramount, CA 90723.

**WHEREAS,** the Facility's industrial activities consist of a renewable fuels production plant that processes animal fats and vegetable oils into transportation fuels, including gasoline, diesel and jet fuel. The Facility is categorized under Standard Industrial Classification ("SIC") Code 2911, covering petroleum refining.

**WHEREAS,** stormwater discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ ("General Permit" or "Permit"), and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS,** Defendant's operations at the Facility result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS,** the General Permit requires all permittees, including Defendant, to comply with, inter alia, the following mandates: (1) develop and implement a stormwater pollution prevention plan ("SWPPP") and a stormwater monitoring implementation plan ("MIP"), (2) control pollutant discharges using, as applicable,

best available technology economically achievable ("BAT") or best conventional pollutant control technology ("BCT") to prevent or reduce pollutants through the development and application of Best Management Practices ("BMPs"), which must be included and timely updated in the SWPPP, (3) reduce and eliminate discharges necessary to comply with any and all applicable Water Quality Standards ("WQS"), and (4) implement a monitoring and reporting program designed to assess compliance with the Permit;

**WHEREAS**, on May 8, 2023, Plaintiff issued a notice of intent to file suit ("60-Day Notice") to Defendant, its registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Director Los Angeles Regional Water Quality Control Board ("Regional Board"), and the Regional Administrator of EPA Region IX, alleging violations of the Clean Water Act and the General Permit Water Quality Order 2014-0057-DWQ, as amended by Order No. 2015-0122-DWQ and Order 2018-0028-DWQ incorporating: 1) Federal Sufficiently Sensitive Test Method Ruling; 2) Total Maximum Daily Load Implementation Requirements; and 3) Statewide Compliance Options Incentivizing On-Site or Regional Storm Water Capture and Use, at the Facility;

**WHEREAS**, on July 11, 2023, LA Waterkeeper filed a complaint against Defendant, Gene Gebolys, Kathryn Gleeson, and Glen Clausen in the Central District of California, Civil Case No. 2:23-cv-05585-GW-PD ("Complaint");

**WHEREAS**, on July 21, 2023, LA Waterkeeper filed a first amended complaint against Defendant, dismissing Gene Gebolys, Kathryn Gleeson, and Glen Clausen ("First Amended Complaint" and together with the Complaint, "Complaints");

**WHEREAS**, Plaintiff's Complaints alleged violations of the General Permit and the Clean Water Act for Defendant's discharges of pollutants into storm drains

and surface waters, including Los Cerritos Channel, which drains to Alamitos Bay, then San Pedro Bay, and ultimately to the Pacific Ocean. ("Receiving Waters");

**WHEREAS**, Plaintiff and Defendant (collectively "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice and Complaints without further proceedings;

**WHEREAS**, all actions taken by Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local rules and regulations.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.     The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

2.     Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District.

3.     The Complaints state a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

4.     LA Waterkeeper has standing to bring this action.

5.     The Court shall retain jurisdiction over this action for purposes of interpreting, modifying, or enforcing the terms of this Consent Decree, or as long thereafter as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the Term of this Consent Decree.

I. **OBJECTIVES**

6.     It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues

alleged by LA Waterkeeper in its 60-Day Notice and Complaints. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

7.  In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facility.

## II. AGENCY REVIEW AND CONSENT DECREE TERM

### A. AGENCY REVIEW OF CONSENT DECREE

1.  <u>Agency Review</u>. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the EPA (the "Federal Agencies") for agency review consistent with 40 C.F.R. § 135.5. The agency review period ("Agency Review Period") expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts (copies of which shall be provided to AltAir), or the date on which the Parties resolve issues raised, if any, by the Federal Agencies, whichever is later. In the event that the Federal Agencies object to entry of this Consent Decree or to any portion of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies. If the Parties are unable to resolve any issue(s) raised by the Federal Agencies in their comments, the Parties agree to expeditiously seek a settlement conference with the assigned Magistrate Judge to resolve any issue(s).

2.  <u>Court Notice</u>. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order to coordinate the Court's calendar with the 45-day review period.

3.  <u>Entry of Consent Decree</u>. Following expiration of the Agency Review Period, Plaintiff shall submit the Consent Decree to the Court and request entry.

[PROPOSED] CONSENT DECREE

**B. DEFINITIONS**

4.    Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, the following definitions apply:

a. "BAT" means the Best Available Technology Economically Achievable.

b. "BCT" means the Best Conventional Treatment Technology.

c. "BMPs" means Best Management Practices.

d. "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

e. "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

f. "Design Storm" means the range of maximum rainfall intensity and/or total cumulative rainfall depth that would be likely to generate a volume and/or flow rate of stormwater runoff that is expected to be captured from the Facility's existing and proposed stormwater retention systems, as described in the Retention Plan.

g. "Discharge Point" means each outfall and discharge location designated in the then-current SWPPP for the Facility.

h. "Effective Date" means the effective date of this Consent Decree, which shall be the day that the Court enters the Consent Decree.

i. "Facility" means the portion of the property at 14700 Downey Avenue, Paramount, CA 90723 that is currently covered under the Notice of Intent for the Industrial General Permit (WDID 4 19I027557/APP ID

1    494104) as described in Figures 2A and 2B of Defendant's SWPPP

2    submitted to SMARTS on January 18, 2018.

3    j.  "MIP" means a Monitoring Implementation Plan.

4    k.  "PPT" means Pollution Prevention Team.

5    l.  "Rain Event" means any rain storm which results in more than three

6    quarters (0.75) of an inch of precipitation at the Facility within a 24-hour

7    period, as measured by the rain gauge/sensor to be installed pursuant to

8    Paragraph 7.

9    m.  "Reporting Year" means the period from July 1 of a given calendar year

10   to June 30 of the following calendar year.

11   n.  "SMARTS" means the California State Water Resources Control

12   Board's Stormwater Multiple Application and Report Tracking System.

13   o.  "SWPPP" means a Storm Water Pollution Prevention Plan.

14   p.  "Term" means the period between the Effective Date and the

15   "Termination Date."

16   q.  "Termination Date" means the latest of:

17       i.  June 30, 2027;

18       ii.  seven (7) calendar days from the conclusion of any proceeding or

19           process to enforce the Consent Decree initiated prior to the date

20           set forth in Paragraph 4(q)(i) above; or

21       iii. seven (7) calendar days from Defendant's completion of all

22           payments and other affirmative duties required by this Consent

23           Decree.

24   r.  "Wet Season" means the seven-month period beginning October 1st of

25   any given calendar year and ending April 30th of the following calendar

26   year.

27

28

[PROPOSED] CONSENT DECREE

III. **COMMITMENTS OF THE SETTLING PARTIES**

    A. **STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES**

5. <u>Non-Storm Water Discharge Prohibition</u>: Any unauthorized non-storm water discharge, as defined in the General Permit, shall be a violation of this Consent Decree.

6. <u>Current and Additional Best Management Practices</u>: In addition to maintaining the current BMPs described in the Facility's SWPPP, Defendant shall (1) develop and implement BMPs identified herein, and (2) develop and implement any other BMPs necessary to comply with the provisions of this Consent Decree and the Storm Water Permit, including but not limited to those that achieve BAT/BCT. In addition, the General Permit Receiving Water Limitations require that discharges from the Facility "not cause or contribute to an exceedance of any applicable water quality standards contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan." Defendant shall develop and implement any other BMPs necessary to comply with the General Permit requirement to achieve compliance with BAT/BCT standards, necessary to comply with the applicable water quality standards, and to prevent or reduce contamination in storm water discharges from the Facility necessary to comply with this Consent Decree.

7. <u>Rain Gauge/Sensor</u>. Defendant shall install and maintain for the duration of the Term an electronic rain gauge or sensor at the Facility within ten (10) days of the Effective Date. The rain gauge/sensor shall be capable of measuring precipitation down to at least 0.1 inches, and record start/stop times and non-cumulative precipitation for each precipitation event. During the Term, Defendant shall collect data using the gauge/sensor for all precipitation events to the nearest 0.1 inch, including start/stop times. Data from the rain gauge/sensor shall be conclusive of precipitation quantities and timing for purposes of this Consent Decree.

[PROPOSED] CONSENT DECREE

8.     <u>Retention Plan</u>: Within fifteen (15) days of the Effective Date, Defendant shall submit a written plan ("Retention Plan") to LA Waterkeeper (a) providing a full assessment of existing and proposed stormwater retention capacity available to the Facility; and (b) establishing the Design Storm, based on existing and proposed retention capacity, site-specific rainfall records, and any relevant requirements contained in the Defendant's pretreatment permit governing the timing and volume of discharge to the sanitary sewer from the Facility.  If needed, Defendant may request a single extension of the submission deadline in this Paragraph of no more than thirty (30) days from LA Waterkeeper, which may be granted by LA Waterkeeper without further approval from the Court.  If the request is denied, Defendant may seek relief through the dispute resolution provisions.

9.     The Retention Plan shall include, at minimum, the following items: (1) the type of retention systems currently implemented or proposed for installation; (2) a map with the existing and proposed retention systems; (3) bypass mechanisms for the discharged volume that is above and beyond the Design Storm, into a local municipal storm system; (4) inspection frequency; (5) titles of personnel authorized to conduct the BMPs inspections; (6) maintenance procedures for existing and proposed retention facilities, including pretreatment systems; and (7) a maintenance schedule.

10.     LA Waterkeeper shall provide Defendant with a written response ("Recommendations") if any, to the Retention Plan within fourteen (14) calendar days of its receipt of the complete Retention Plan. Defendant shall in good faith consider incorporating any feasible proposed Recommendations into the Retention Plan, provide a separate written rationale explaining why any of the Recommendations were not accepted or incorporated, and provide a final Retention Plan to LA Waterkeeper within fifteen (15) calendar days of receipt of any Recommendations.

11.     The system set forth in the final Retention Plan shall be installed and fully operational, in accordance with the specifications of the final Retention Plan, no later

[PROPOSED] CONSENT DECREE

than thirty (30) days following the submission of the final Retention Plan referenced in the Paragraph above. Defendant shall confirm the installation of the retention system by sending LA Waterkeeper photographs of the installed system and a certification that installation of the system has been completed and that the system is fully operational according to the specifications of the final Retention Plan. After the retention system is fully operational, a discharge of storm water from a storm event smaller than the Design Storm shall be a violation of this Consent Decree.

12.    After the retention system is fully operational, Defendant shall take date-stamped photographs or videos of sample locations S1 and S2, as well as from the gates of the South Storage Yard to the southwest of sample point S2 and the North Storage Yard to the east of sample point S2, during each Rain Event that occurs during the Facility's normal business hours to demonstrate that no water is being discharged from the Facility at that location. Such photographs or videos shall be provided to LA Waterkeeper upon seven (7) days of written request.

13.    Structural and Non-Structural BMPs for the Facility: Within thirty (30) days of the submission of the final Retention Plan referenced in Paragraph 10, Defendant shall develop and implement the following BMPs at the Facility:

    a.  Defendant shall construct additional berms and install trench drains to (i) route flows from the northwest corner of the Facility to the existing retention basin and (ii) route flows from the southeast corner of the Facility to onsite containment.

    b.  Defendant shall replace all existing manual and portable pumps at the Facility's prior sampling points with permanent automated pumps, and shall ensure such pumps are fully operational.

    c.  During the Term, Defendant shall implement a sweeping program using a PM-10 compliant street sweeper on all paved areas and accessible roadways within the Facility's property lines daily during the Wet

[PROPOSED] CONSENT DECREE

Season, and otherwise at least once per week, and employ hand sweeping in areas a mechanical sweeper cannot access on the same schedule.

d. During the Term, Defendant shall institute a year-round truck wash program for all trucks leaving the Facility to reduce the potential for offsite transport of materials from trucks engaging in industrial activities. Truck wash stations should be located as close as possible to and upgradient to the trench drains, and rumble strips should be positioned on approach to the wash stations to enhance wash efficiency.

e. Defendant shall fully berm and/or otherwise contain all runoff from the South Storage Yard to the southwest of sample point S2 and the North Storage Yard to the east of sample point S2 to prevent all discharge of stormwater for those locations.

f. Defendant shall fully berm and/or otherwise contain all runoff from the gate to the North Storage Yard to the east of sample point S2.

g. Defendant shall not perform vehicle maintenance within the Facility.

h. During the Term, Defendant shall inspect operation work areas located within the Facility daily to ensure adequate implementation and maintenance of operational procedures and control measures.

i. During the Term, Defendant shall institute a formal pre-rain protocol throughout the Wet Season, involving pump testing, cleaning of trench drains, as-needed replacement of any wattles deployed at the site, and sweeping interior portions of the Facility to reduce the potential for truck track out.

j. Within thirty-seven (37) days of the submission of the final Retention Plan referenced in the Paragraph 10, Defendant shall confirm to LA Waterkeeper in writing, with photographs, that the BMPs described in

Paragraphs 13.a, 13.b, 13.e, and 13.f have been implemented as set forth above. For all of the other above BMPs, written confirmation that the above BMPs are being implemented shall be provided to LA Waterkeeper upon seven (7) days of written request.

## B. SAMPLING AT THE FACILITY

14.　Defendant shall develop a monitoring program consistent with the General Permit. During the Term, Defendant shall comply with the monitoring and reporting requirements set forth in the General Permit, Attachment I § II.H.

## C. ELIMINATION OF UNAUTHORIZED DISCHARGES

15.　Action Plans: As of the Effective Date, and for the remainder of the Term, if Defendant discharges non-stormwater from a Discharge Point in violation of Paragraph 5, or there is a discharge of storm water from a storm event smaller than the Design Storm in violation of Paragraph 11, Defendant shall prepare and submit to LA Waterkeeper a plan for eliminating the discharge of non-stormwater, and/or the discharge of storm water from a storm event smaller than the Design Storm, as applicable ("Action Plan"). The complete Action Plan shall be submitted to LA Waterkeeper within sixty (60) days of the non-stormwater discharge or the discharge of storm water from a storm event smaller than the Design Storm, as applicable.

　　　a.　Action Plan Requirements. Each complete Action Plan submitted shall include at a minimum: (1) photographs of the discharge, if available, along with rain gauge/sensor data for the applicable date; (2) a description of the discharge, including without limitation, the date and time, location, and approximate volume; (3) an assessment of the cause(s) (e.g., failure of structural BMP, staff error); (4) the identification of additional BMPs that shall be implemented to achieve compliance with this Consent Decree, as well as the design plans and calculations of these additional BMPs; and (5) time schedules for

implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that there are processes in place to ensure that BMPs are implemented as soon as possible, but in no event later than ninety (90) days following the finalization of the Action Plan pursuant to Paragraph 15(c), unless a later implementation date is mutually agreed upon by the Settling Parties.  Defendant shall notify LA Waterkeeper in writing, with photographs, that an Action Plan has been implemented within seven (7) days of the BMPs being implemented.

b. Action Plan Proposed BMPs: The following BMPs should generally be evaluated for inclusion in Action Plans to attain compliance with this Consent Decree:

i. Hydrologic Controls: Installation of additional berms or equivalent structural controls necessary to reduce or prevent storm water from flowing off site other than through the engineered storm water conveyance system or storm water retention or treatment facilities.

ii. Treatment Systems: Installing additional components or systems, or otherwise improving, the retention system, or making changes to the operation and maintenance protocols for such system, to provide more effective filtration treatment and/or retention of storm water prior to discharge.

iii. Evaluation of Existing BMPs:  Replacing, rehabilitating, or eliminating existing BMPs, taking into account the age of the BMPs involved or employed, the engineering aspect of the application of various BMPs, and any adverse environmental impact of the BMPs.

c.  <u>Action Plan Review</u>: LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's complete Action Plan to provide Defendant with comments. Within thirty (30) days of receiving LA Waterkeeper's proposed revisions to an Action Plan, Defendant shall consider each of LA Waterkeeper's recommended revisions and accept them or justify in writing why any comment is not incorporated. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan.

d.  Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan, as set forth in Paragraph 20.b.i below.

e.  <u>Action Plan Payments</u>: Defendant shall pay Five Thousand Dollars ($5,000.00) each time an Action Plan is submitted to LA Waterkeeper. Payments shall be made to "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Barak Kamelgard, 360 E 2nd Street Suite 250, Los Angeles, CA 90012. Failure to submit a payment as required under this Paragraph will constitute a breach of the Consent Decree.

**D.  VISUAL OBSERVATIONS**

16.  <u>Storm Water Discharge Observations</u>: During the Term, appropriately trained staff of Defendant shall conduct visual observations during the Facility's normal business hours of every Rain Event. Such inspections shall comply with all requirements of Section XI.A.2 of the General Permit, and any successor thereof, and shall include at a minimum, a visual observation of each Discharge Point to confirm

1  that there is no discharge from a storm event smaller than the Design Storm in

2  violation of Paragraph 11.

3       17.  <u>Monthly Visual Observations</u>: During the Term, appropriately trained

4  staff of Defendant shall conduct monthly non-storm water visual observations of the

5  Facility. Such inspections shall comply with all requirements of Section XI.A.1 of the

6  General Permit, and any successor thereof. Such monitoring shall include outfalls,

7  Discharge Points, outdoor industrial equipment and storage areas, outdoor industrial

8  activities areas, BMPs, and all other potential sources of industrial pollutants. All

9  Discharge Points shall also be inspected for accumulation of dust, sediment, sand,

10  grit, oily substances, oily sheens upon any standing water, and other materials

11  associated with operations at the Facility. During the Wet Season, such inspections

12  shall further include observations of all storm water BMPs that are used only during

13  the Wet Season at the Facility to ensure that operational BMPs are being

14  implemented, structural BMPs are in good condition or working order, and that

15  BMPs have been effective in producing clean conditions at the Facility. Such

16  inspections shall further include observation as to whether there are any non-storm

17  water discharges from the Facility.

18       18.  <u>Visual Observations Records</u>: Defendant shall maintain observation

19  records, including photographs, to document compliance with Paragraphs 16 and 17.

20  Such records shall include, but not be limited to, the persons who completed the

21  inspection, the date of the inspection, and notes sufficient to describe the completed

22  activity and all observations thereof, including but not limited to: (i) whether BMPs

23  are in an adequate condition; (ii) whether any repair, replacement, or operation and

24  maintenance is needed for any BMPs; (iii) other conditions that have the potential to

25  lead to pollutant loading in storm water discharges; and (iv) photographs of all the

26  foregoing.  Defendant shall provide LA Waterkeeper with a copy of those records

27

28

14

[PROPOSED] CONSENT DECREE

1  within seven (7) days of receipt of a written request from LA Waterkeeper for those

2  records.

3       19.   <u>Employee Training Program</u>: Within forty-five (45) days of the Effective

4  Date, Defendant shall develop and implement an employee training program that

5  meets the following requirements and ensures (1) that there is a sufficient number of

6  employees at the Facility designated to achieve compliance with the General Permit

7  and this Consent Decree ("Designated Employees"), and (2) that these Designated

8  Employees are properly trained to perform the activities required by the General

9  Permit and this Consent Decree ("Training Program"):

10          a.   Training materials should include, at minimum, a detailed Training

11               Manual or Standard Operating Procedure, including drawings and

12               diagrams where appropriate, for reference and use by Defendant's

13               personnel to ensure effective implementation of all BMPs at the Facility;

14          b.   <u>Language</u>. The training and training materials shall be available and

15               offered in the language(s) in which relevant employees are fluent. If

16               necessary, Defendant shall provide a translator or translators at all

17               trainings where such translation is likely to improve staff comprehension

18               of the Training Program and improve compliance with this Consent

19               Decree and the General Permit;

20          c.   Training shall be developed or approved by a Qualified Industrial Storm

21               Water Practitioner ("QISP", as defined in Section IX.A of the 2015

22               Permit) familiar with the requirements of this Consent Decree and the

23               General Permit, and shall be repeated as necessary to ensure that all

24               relevant employees are familiar with the requirements of this Consent

25               Decree, the Permit, and the Facility's SWPPP. All relevant new staff

26               shall receive this training before assuming responsibilities for

27               implementing the SWPPP;

28

d. <u>Visual Observation Training</u>: Defendant shall provide training on how and when to properly conduct visual observations to Designated Employees;

e. <u>Non-Storm Water Discharge Training</u>: Defendant shall train all Designated Employees at the Facility on the General Permit's prohibition of non-storm water discharges, so that Designated Employees know what non-storm water discharges are and how to detect and prevent non-storm water discharges;

f. <u>Employees</u>: All Designated Employees at the Facility shall participate in the Training Program annually. New Designated Employees shall participate in the Training Program within thirty (30) days of their hiring date;

g. Defendant shall maintain training records to document compliance with this Paragraph and shall provide LA Waterkeeper with a copy of these records within seven (7) days of receipt of a written request;

20. <u>SWPPP Revisions</u>:

a. <u>Initial SWPPP Revisions</u>: Defendant shall amend the Facility's SWPPP to incorporate the requirements in this Consent Decree and comply with the General Permit and submit the complete, updated SWPPP to LA Waterkeeper within sixty (60) days of the Effective Date for LA Waterkeeper's review and comment.  The complete, updated SWPPP shall contain, at a minimum, the following elements:

i. A revised pollutant source assessment, including all elements required by section X.G of the General Permit as well as assessments of the potential for the Facility's storm water discharges to contain pollutants for which the Receiving Waters are 303(d) listed and/or have Total Maximum Daily Loads;

[PROPOSED] CONSENT DECREE

    ii. A detailed narrative description of each industrial activity with the potential to impact storm water quality occurring at the Facility as required by section X.G of the General Permit;

    iii. Descriptions of all BMPs in accordance with section X.H.4 of the General Permit, including without limitation BMPs required by this Consent Decree;

    iv. Incorporation of the analyses and conclusions of the final Retention Plan, including any technical drawings or plans for any Facility modifications, such as the installation and operation of the retention system, including photographs of the retention system;

    v. A set of site maps that comply with section X.E of the General Permit and provisions of this Consent Decree, including that such site maps reflect flow pathways from all portions of the Facility, as well as the locations of all BMPs and the retention system;

    vi. A MIP as required by sections XI and X.I of the General Permit;

    vii. Documentation as required by the General Permit, Attachment I § II.H.3.

    viii. A designation (by position/title) of employees responsible for carrying out storm water management, monitoring, sampling and SWPPP implementation, e.g., visual inspection of each specific area, monitoring each specific BMP, sampling, etc.; and

    ix. A Training Program as described above at Paragraph 19.

b. <u>Additional SWPPP Revisions</u>:

    i. Within thirty (30) days after approval of any Action Plan by LA Waterkeeper (or resolution pursuant to Dispute Resolution), Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan and submit the complete,

[PROPOSED] CONSENT DECREE

updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

    ii.  Within thirty (30) days after any changes in industrial activities, sources of industrial pollutants, changes to Discharge Points, or changes to sections of the SWPPP identified in the SWPPP as requiring a SWPPP revision (including but not limited to, changes in Facility contacts or PPT members, changes or additions of BMPs, or changes in or additions of industrial activities that impact storm water discharge), Defendant shall revise the then-current SWPPP to reflect such changes and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

c.  <u>Review of SWPPP</u>:  For any SWPPP updates pursuant to Paragraph 20(a) and 20(b), LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's complete SWPPP to provide Defendant with comments. Within thirty (30) days of receiving LA Waterkeeper's comments and proposed changes to the SWPPP, Defendant shall consider each of the comments and proposed changes and either accept them or justify in writing why a change is not incorporated. The Parties agree to work in good faith to resolve any disputes with respect to the SWPPP, and any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV below. Following its incorporation of proposed modification or additions (if any) into each revised SWPPP, Defendant shall upload the SWPPP to SMARTS.

[PROPOSED] CONSENT DECREE

### E. COMPLIANCE MONITORING AND REPORTING

21. Every year during the Term, LA Waterkeeper may conduct one annual site inspection ("Site Inspection") for the purpose of ensuring compliance with this Consent Decree and the General Permit. In the event of a dispute regarding Defendant's compliance with this Consent Decree, and provided a Site Inspection would be relevant to resolving the Parties' dispute, the Parties agree to meet and confer regarding one additional Site Inspection at Plaintiff's request. Plaintiff shall not unreasonably request, and Defendant shall not unreasonably deny, one additional Site Inspection. Any Site Inspection shall occur during normal business hours, and LA Waterkeeper will provide Defendant with at least seventy-two (72) hours' notice prior to a Site Inspection. For any Site Inspection requested to occur during wet weather, Plaintiff shall be entitled to adjust timing or reschedule during normal business hours in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather. Notice will be provided by electronic mail to the individual(s) designated below at Paragraph 50. During the wet weather inspection, Plaintiff may request to witness the Defendant collecting its required sample of industrial storm water discharge from the Facility's designated industrial discharge point(s) referenced in its SWPPP, to the extent that such discharges are occurring. LA Waterkeeper shall be permitted to take photographs or video recording during any Site Inspection.

22. During the Term, Defendant shall upload compliance documents, monitoring and/or sampling data and any documents required to be submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality to SMARTS.

23. Within seven (7) days of a written request, Defendant shall provide to Plaintiff all written communications and/or correspondence, compliance document, inspection report, or any document related to storm water quality at the Facility that

[PROPOSED] CONSENT DECREE

1   are submitted to, or received from, the Regional Board, the State Board, and/or any

2   state or local agency, county or municipality that were not otherwise uploaded to

3   SMARTS.

4       24.    <u>Compliance Monitoring</u>. Defendant agrees to partially defray costs

5   associated with Plaintiff's monitoring of Defendant's compliance with this Consent

6   Decree during the Term by paying Fifteen Thousand Dollars ($15,000.00). This

7   payment shall be made within thirty (30) days of the Effective Date.  The payment

8   shall be made via check, made payable to: "Los Angeles Waterkeeper" via certified

9   mail, return receipt requested to Los Angeles Waterkeeper, c/o Barak Kamelgard, 360

10  E 2nd Street Suite 250, Los Angeles, CA 90012. Failure to submit the payment as

11  required under this Paragraph will constitute breach of the Consent Decree.

12      **F.  ENVIRONMENTAL MITIGATION, LITIGATION FEES AND COSTS, STIPULATED PENALTIES, AND INTEREST**

13

14      25.    <u>Environmental Mitigation Project</u>: To fund environmental project

15  activities that will reduce or mitigate the impacts of storm water pollution from

16  industrial activities occurring in watersheds tributary to the Southern California

17  Bight, Defendant agrees to make a payment totaling Forty Thousand Dollars

18  ($40,000) to the Rose Foundation within thirty (30) days of the Effective Date,

19  payable to the Rose Foundation for Communities and the Environment and sent via

20  overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607.

21  Failure to submit payment as required under this Paragraph will constitute breach of

22  the Consent Decree.

23      26.    <u>LA Waterkeeper's Fees and Costs</u>: Defendant agrees to pay a total of

24  $47,500 to LA Waterkeeper to partially reimburse Plaintiff for their investigation fees

25  and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs

26  incurred as a result of investigating and filing the lawsuit, and negotiating a resolution

27  of this matter within thirty (30) days of the Effective Date. The payment shall be

28

1 made payable to: "Law Offices of Andrew L. Packard Attorney-Client Trust

2 Account" and remitted to Plaintiff's counsel by ACH or wire transfer to:

3    Bank of America Corporate Center
     100 North Tryon Street, Charlotte, NC 28255
4    ACH Routing # 121000358
     Wire Routing # 026009593
5    Law Offices of Andrew L. Packard Attorney-Client Trust Account # 16649-
6    09357

7 Failure to submit payment as required under this Paragraph will constitute breach of

8 the Consent Decree.

9        27.    <u>Interest on Late Payments</u>: Defendant shall pay interest on any

10 payments, fees, or costs owed pursuant to this Consent Decree that are not received

11 by the due date. The interest shall accrue starting the next business day after the

12 payment is due and shall be computed at a rate equal to the lower of: (i) 10% per year

13 (0.833% per month); or (ii) the maximum rate permitted by applicable law. Interest

14 shall continue to accrue daily on any outstanding balance until Defendant is current

15 on all payments then due under this Consent Decree, and shall be paid at the same

16 time that the payments, fees, or costs owed are paid to LA Waterkeeper. Interest on

17 late payments shall be paid by check payable to: Rose Foundation for Communities

18 and the Environment, and such funds shall be used for the sole purpose of funding

19 environmentally beneficial projects, as described in Paragraph 25. Payment shall be

20 sent via overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA

21 94607.

22  IV. **DISPUTE RESOLUTION**

23        28.    This Court shall retain jurisdiction over this matter for the Term for the

24 purposes of enforcing its terms and conditions, and adjudicating all disputes among

25 the Parties that may arise under the provisions of this Consent Decree. The Court

26 shall have the power to enforce this Consent Decree with all available legal and

27 equitable remedies, including contempt.

28

29.  <u>Meet and Confer</u>. Either party to this Consent Decree may invoke the dispute resolution procedures of this Section IV for any and all disputes related to the interpretation of and/or compliance with this Consent Decree by notifying the other party in writing of the matter(s) in dispute and of the disputing party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within fourteen (14) days of the date of the notice in an attempt to fully resolve the dispute.

30.  <u>Settlement Conference</u>. If the Parties cannot resolve the dispute within thirty (30) days of the meet and confer described in Paragraph 29, the Parties shall request a settlement meeting or conference before the Magistrate Judge assigned to this action.

31.  <u>Motion</u>.  In the event the Parties cannot fully resolve the dispute within thirty (30) calendar days of the settlement conference described in Paragraph 30, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California.

32.  In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

V. **MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE**

33.  <u>Plaintiff's Waiver and Release of Defendant</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its officers and directors, release Defendant, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were raised or could have been raised in the 60-Day Notice and/or the

1  Complaints for any and all violations of the Permit or the Clean Water Act up to and

2  including the Termination Date of this Consent Decree.

3      34.   <u>Defendant's Waiver and Release of Plaintiff</u>. In consideration of the

4  above, upon the Effective Date of this Consent Decree, Defendant, on its own behalf

5  and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and

6  each of their successors or assigns, release Plaintiff, its officers and directors, from

7  and waives all claims related to the 60-Day Notice and/or the Complaints up to and

8  including the Termination Date of this Consent Decree.

9      35.   Nothing in this Consent Decree limits or otherwise affects Plaintiff's

10  rights to address or take any position that it deems necessary or appropriate in an

11  informal or formal proceeding before the State Board, Regional Board, EPA, or any

12  other judicial or administrative body on any matter relating to Defendant's

13  compliance at the Facility with the Stormwater Permit or the Clean Water Act

14  occurring or arising after the Effective Date.

15  VI. **MISCELLANEOUS PROVISIONS**

16      36.   <u>No Admission of Liability</u>. The Parties enter into this Consent Decree

17  for the purpose of avoiding prolonged and costly litigation. Neither the Consent

18  Decree nor any payment pursuant to the Consent Decree shall constitute or be

19  construed as a finding, adjudication, or acknowledgement of any fact, law or liability,

20  nor shall it be construed as an admission of violation of any law, rule, or regulation.

21  Defendant maintains and reserves all defenses it may have to any alleged violations

22  that may be raised in the future.

23      37.   <u>Counterparts</u>. This Consent Decree may be executed in any number of

24  counterparts, all of which together shall constitute one original document.  Telecopy

25  and/or facsimile copies of original signature shall be deemed to be originally

26  executed counterparts of this Consent Decree.

27

28

38. <u>Authority</u>. The undersigned representatives for Plaintiff and Defendant each certify that s/he is fully authorized by the party whom s/he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

39. <u>Construction</u>. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

40. <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

41. <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

42. <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

43. <u>Choice of Law</u>. The laws of the United States shall govern this Consent Decree.

44. <u>Diligence</u>: Defendant shall diligently file and pursue all required permit applications for the structural BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

45. <u>Effect of Consent Decree</u>: Compliance with this Consent Decree does not excuse Defendant from complying with all applicable federal, state, and local laws, rules, or regulations.

46.   <u>Negotiated Settlement</u>. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

47.   <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court.  Alternatively, any party can seek modification from the Court pursuant to the dispute resolution provisions above.

48.   <u>Assignment</u>. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendant shall notify Plaintiff within ten (10) days of any assignment.

49.   <u>Force Majeure</u>. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is an event arising from any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any party seeking to rely upon this Paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by

1  exercise of due diligence has been unable to overcome the failure of performance.

2  The Parties shall exercise due diligence to resolve and remove any Force Majeure

3  event.

4       50.    Correspondence. All notices required herein or any other correspondence

5  pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail

6  transmission to the e-mail address listed below, or if electronic mail is not feasible,

7  then by certified U.S. mail with return receipt, or by hand delivery to the following

8  addresses:

9

10  If to Plaintiff:                           If to Defendant:
    Los Angeles Waterkeeper                    AltAir Paramount
11  Barak Kamelgard                            Mohsen Ahmadi
    Benjamin Harris                            Kathryn Gleeson
12  360 E 2nd St., Suite 250                   Anuya Dickinson
13  Los Angeles, CA 90012                      14700 Downey Avenue
    barak@lawaterkeeper.org                    Paramount, CA 90723
14  ben@lawaterkeeper.org                      MAhmadi@worldenergy.net
15  Phone: (310) 394-6162                      Phone: (562) 748-4681
                                               KGleeson@worldenergy.net
16                                             Phone: (562) 577-4613
17                                             ADickinson@worldenergy.net
                                               Phone: (562) 577-1411
18
19  With copies to:                            With copies to:
    Law Offices of Andrew L. Packard           Alston & Bird LLP
20  Andrew L. Packard                          Matthew C. Wickersham
    William N. Carlon                          Hannah M. Hess
21  245 Kentucky Street, Suite B3              333 S. Hope St., 16th Fl.
22  Petaluma, CA 94952                         Los Angeles, CA  90071
    andrew@packardlawoffices.com               Matt.Wickersham@alston.com
23  wncarlon@packardlawoffices.com             Hannah.Hess@alston.com
    Phone: (707) 782-4060                      Phone: (213) 576-1000
24  Fax: (707) 782-4062

25

26  Notifications of communications shall be deemed submitted three (3) days after the

27  date that they are postmarked and sent by first-class mail, or immediately after

28

1  transmission by electronic mail. Any change of address or addresses shall be

2  communicated in the manner described above for giving notices.

3      51.    If for any reason the DOJ should object to this Consent Decree or the

4  District Court should decline to approve this Consent Decree in the form presented,

5  the Parties shall use their best efforts to work together to modify the Consent Decree

6  within thirty (30) days so that it is acceptable to the DOJ or the District Court. If the

7  Parties are unable to modify this Consent Decree in a mutually acceptable manner

8  that is also acceptable to the District Court, this Consent Decree shall immediately be

9  null and void as well as inadmissible as a settlement communication under Federal

10  Rule of Evidence 408 and California Evidence Code section 1152.

11

12      The Parties hereto enter into this Consent Decree and submit it to the Court for

13  its approval and entry as a final judgment.

14      IN WITNESS WHEREOF, the undersigned have executed this Consent Decree

15  as of the date first set forth below.

16

17  APPROVED AS TO CONTENT

18

19

20  Dated: October 13, 2023              By: _____

21                                          Bruce Reznik
                                            Los Angeles Waterkeeper
22

23

24  Dated: _____10/13/2023_____, 2023     By: _____
                                            Mohsen Ahmadi
25                                          C2628F0ED7C243A...
                                            Mohsen Ahmadi
26                                          AltAir Paramount, LLC

27

28

[PROPOSED] CONSENT DECREE

APPROVED AS TO FORM

Law Offices of Andrew L. Packard

Dated: October 13, 2023          By: _____
                                       William N. Carlon
                                       Attorney for Plaintiff
                                       Los Angeles Waterkeeper



Dated: October 12, 2023          By: _____
                                       Matthew Wickersham
                                       Attorney for Defendant
                                       AltAir Paramount, LLC

**IT IS SO ORDERED.**

**FINAL JUDGMENT**

　　Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the Plaintiff and Defendant.


Dated: _____          CENTRAL DISTRICT OF CALIFORNIA



                                      _____
                                      HONORABLE GEORGE H. WU
                                      United States District Court Judge